MICHELE M. BECKWITH
First Assistant United States Attorney
JOSEPH D. BARTON
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>SHAWN SAWA,<br><br>                    Defendant. | CASE NO. 1:22-CR-00241-JLT-SKO<br><br>PLEA AGREEMENT<br><br>DATE:  TBD<br>TIME:  TBD<br>COURT: HON. JENNIFER L. THURSTON |

## I.  INTRODUCTION

**A.  Scope of Agreement.**

The Indictment in this case charges the defendant, SHAWN SAWA, in Count One for conspiring to commit wire fraud in violation of 18 U.S.C. § 1349 and in Counts Two through Four for committing wire fraud in violation of 18 U.S.C. § 1343. This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California (hereinafter, the "government") and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

///

///

1

B. **Court Not a Party.**

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant. This includes activities that may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea and he will remain bound to fulfill all of the obligations under this Plea Agreement. The defendant agrees the prosecutor, defense counsel, or the Court cannot make a binding prediction or promise regarding the sentence he receives.

## II.   DEFENDANT'S OBLIGATIONS

A. **Guilty Plea.**

The defendant will plead guilty to Count One of the Indictment for conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. The defendant agrees that he is in fact guilty of this crime and that the facts set forth in the Factual Basis for Plea attached as Exhibit A are accurate.

The defendant agrees that this Plea Agreement will be filed with the Court and become a part of the record in this case. The defendant agrees that he will not be allowed to withdraw his guilty plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Plea Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings even if the defendant fails to enter a guilty plea pursuant to this Plea Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 to the extent that these rules are inconsistent with this paragraph or with this Plea Agreement generally.

B. **Restitution.**

The defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii). He also agrees to pay the full amount of restitution owed to all victims

affected by his offense. This includes the victims covered in the Factual Basis for Plea. The amount of restitution will not exceed $2,000,000, and co-defendant Richard Best shall be jointly and severally liable for that amount. Defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the government. He may sell, transfer, or convey property with an aggregate value of less than $5,000 without obtaining consent unless it is financial instruments, ownership interests in business entities, or real property.

The defendant agrees that all criminal monetary penalties imposed by the Court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. He also agrees that any payment schedule or plan set by the Court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court. The defendant agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C.    Fine.**

The parties agree that no fine is appropriate.

**D.    Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order, payable to the United States District Court, to the United States Probation Office before the sentencing hearing. He also agrees that this Plea Agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

**E.    Violation of Plea Agreement and Withdrawal of Plea.**

If the defendant, cooperating or not, violates this Plea Agreement in any way, withdraws his plea, or tries to withdraw his plea, this Plea Agreement is voidable at the option of the government. If the government voids the Plea Agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates a plea agreement by committing any crime or providing or procuring any statement or testimony that is knowingly false, misleading, or materially

incomplete in any litigation or sentencing process in this case, or engaging in any post-plea conduct constituting obstruction of justice. Varying from stipulated United States Sentencing Guidelines ("USSG") application or agreements regarding arguments as set forth in this Plea Agreement, personally or through counsel, also constitutes a violation of the Plea Agreement. The government will have the right to: (1) prosecute the defendant on any of the counts to which he pleaded guilty; (2) reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) file any new charges that would otherwise be barred by this Plea Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses that he may have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant also agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or the Speedy Trial Act or Speedy Trial Clause of the Sixth Amendment. The determination whether the defendant violated the Plea Agreement will be by probable cause.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Fed. R. Crim. P. 11(f), Fed. Rule Evid. 410, or any other federal rule, that statements made by him before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

///

///

### F. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and he will complete the government's Authorization to Release Information and Financial Affidavit within five weeks from the entry of his change of plea. This includes supporting documentation. The defendant also agrees to have the Court enter an order to this effect. Finally, the defendant agrees that if he fails to complete truthfully and provide the described documentation to the government within the allotted time, he will be considered in violation of the Plea Agreement and the government shall be entitled to the remedies in section II.E.

### G. Agreement to Cooperate.

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, cooperation requires the defendant to: (1) respond truthfully and completely to all questions, whether in interviews, in correspondence, in telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not participate in any criminal activity while cooperating with the government; and (5) disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

### III. GOVERNMENT'S OBLIGATIONS

### A. Dismissals and Other Charges.

The government agrees to dismiss the remaining charges in the Indictment and not to bring any other charges arising from the conduct outlined in the Factual Basis for Plea except if this Plea Agreement is voided or as provided in paragraphs II.E (Violation of Plea Agreement and Withdrawal of Plea), III.B.3 (Reduction of Sentence for Cooperation), VI.B (Stipulated USSG Calculations), and VII.C (Waiver of Appeal and Collateral Attack).

**B.     Recommendations.**

      1.     Incarceration Range.

The government will recommend that the defendant be sentenced to no greater than the low-end of the applicable USSG range as determined by the Court.

      2.     Acceptance of Responsibility.

The government will recommend a two-level reduction if the offense level is less than 16 or a three-level reduction if the offense level reaches 16 in the computation of his offense level if he demonstrates acceptance of responsibility for his conduct as defined in USSG § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of USSG § 3C1.1 either in the preparation of the pre-sentence report or during the sentencing proceeding.

      3.     Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to fifty percent of the applicable USSG sentence if he provides substantial assistance to the government pursuant to USSG § 5K1.1.

The defendant must comply with paragraph II.G and not violate this Plea Agreement as set forth in paragraph II.E.  The defendant agrees that it is within the sole and exclusive discretion of the government to determine whether he has provided substantial assistance.  He also agrees that the government may recommend a reduction in his sentence of less than fifty percent, or no reduction at all, depending on the level of assistance the government determines he has provided.  Finally, the defendant agrees that a motion pursuant to USSG § 5K1.1 is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right upon the defendant to require that the government make a USSG § 5K1.1 motion, and that this Plea Agreement confers no remedy upon the defendant in the event that the government declines to make a USSG § 5K1.1 motion.  In particular, the defendant agrees not to try to file a motion to withdraw his guilty plea based on the fact that the government decides against recommending a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.  If the government determines that the defendant has provided further cooperation

6

within one year following sentencing, the government may move for a further reduction of his sentence pursuant to Fed. R. Crim. Proc. 35.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and the United States Probation Office at sentencing, including answering any inquiries and rebutting any inaccurate statements that are made. The defendant agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of conspiracy to commit wire fraud:

Conspiracy to Commit Wire Fraud:

1. Defendant entered an agreement with at least one other person to, in some way, try to accomplish a common and unlawful plan to commit the crime of wire fraud; and
2. Defendant knew the unlawful purpose of the plan and willfully joined in the plan with the intent to accomplish it.

Wire Fraud:

1. Defendant knowingly participated in a scheme and artifice to defraud and made false representations in connection therewith;
2. False representations were material and capable of influencing a person to part with money or property;
3. Defendant acted with intent to defraud, that is, the intent to deceive and cheat; and
4. Defendant caused an interstate wire to be used to carry out an essential part of the scheme and artifice to defraud.

18 U.S.C. §§ 1343 and 1349. The defendant understands the nature and elements of the crime charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is 20 years of incarceration, a fine of $250,000, a three-year period of supervised release, and a special assessment of $100. By signing this Plea Agreement, the defendant agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant also agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. Finally, the defendant agrees that he will not attempt to discharge in any bankruptcy proceeding any restitution imposed by the Court.

### B. Supervised Release Violations.

The defendant agrees that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require him to serve up to two additional years of imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant agrees that the Court must consult the USSG and take them into account when determining a final sentence. The defendant also agrees that the Court will determine a non-binding and advisory sentencing range for this case pursuant to the USSG and must take it into account when determining a final sentence. The defendant further agrees that the Court will consider whether there is a basis for departure from the sentencing range, either above or below the sentencing range, because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration in formulating the USSG. Finally, the defendant agrees that the Court, after consultation and consideration of the USSG, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Stipulated USSG Calculations.

The government and the defendant agree that there is no material dispute as to the following USSG variables and therefore stipulate to the following:

1. Base offense level: 7
2. Loss amount: +18 (loss over $3,500,000)
3. Abuse of trust: +2
4. Mitigating role: -3 (loss amount greatly exceeds defendant's personal gain)
5. Acceptance of responsibility: - 3
6. Criminal history category: I
7. Total offense level: 21
8. Range of imprisonment before any reduction for cooperation: 37 to 46 months

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any departures from the USSG.

The government will recommend that the defendant be sentenced to no greater than the low-end of the applicable sentencing range as determined by the Court. The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

### VII. WAIVERS

**A.   Waiver of Constitutional Rights.**

The defendant agrees that by pleading guilty he is waiving the following constitutional rights: (1) to plead not guilty and to persist in that plea if already made; (2) to be tried by a jury; (3) to be assisted at trial by an attorney, who would be appointed if necessary; (4) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (5) to subpoena witnesses to testify on his behalf; (6) to confront and cross-examine witnesses against him; and (7) not to be compelled to incriminate himself.

**B.   Waiver of Appeal and Collateral Attack.**

The defendant agrees that the law gives him a right to appeal his guilty plea, conviction, and sentence. The defendant also agrees as part of his plea, however, to give up the right to appeal the guilty

plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which he is pleading guilty. Finally, the defendant agrees that this waiver includes, but is not limited to, any and all constitutional or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this Plea Agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; or (2) the government appeals the sentence in the case. The defendant agrees that these circumstances occur infrequently and that in almost all cases this Plea Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, he also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the count to which he is pleading guilty, the government shall have the rights set forth in Section II.E.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant agrees that no one, including his attorney or the district court, can predict to a certainty the effect of his

conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII.     ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to in writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///

///

///

## IX.  APPROVALS AND SIGNATURES

### A.  Defense Counsel:

I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: 7/20/2023

_____
MARK COLEMAN
Attorney for Shawn Sawa

### B.  Defendant:

I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the USSG that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: July 14, 2023

_____
SHAWN SAWA
Defendant

### C.  Attorney for United States:

I accept and agree to this Plea Agreement on behalf of the government.

Dated:

PHILLIP A. TALBERT
United States Attorney

JOSEPH BARTON  Digitally signed by JOSEPH BARTON
Date: 2023.07.20 18:29:46 -07'00'
_____
JOSEPH D. BARTON
Assistant United States Attorney

# EXHIBIT A

# FACTUAL BASIS FOR PLEA

Richard Best owned and operated the train-to-truck transloading company, Richard Best Transfer, Inc. ("RBT"), in Tulare County, State and Eastern District of California. A transloading company transfers other companies' commodities from one mode of transportation to another mode. RBT focused on agricultural commodities like canola, which is used in cow feed.

One of RBT's main customers was COMPANY ONE, which was an international food processor headquartered in Illinois. SHAWN SAWA was the manager of COMPANY ONE's branch office in Fresno County, State and Eastern District of California, and he developed a close relationship with Best.

Best caused RBT to enter into contracts with COMPANY ONE and other companies. These contracts required RBT to maintain accurate inventories of COMPANY ONE's commodities that it had in-stock and to submit inventory reports to COMPANY ONE on a daily and monthly basis.

From January 2015 through February 2017, Best caused, and SAWA knew and allowed, COMPANY ONE and other companies' canola that was delivered to RBT to be sold without obtaining authorization from or compensating the companies. The sales were made through INDIVIDUAL ONE, who deposited the proceeds into INDIVIDUAL ONE's bank account.

Best and SAWA agreed that INDIVIDUAL ONE could take a small commission from the proceeds. Best then gave INDIVIDUAL ONE instructions regarding when, how, and in what amounts to distribute the remainder. INDIVIDUAL ONE made the payments by wire transfers from his bank account to Best and SAWA's bank accounts.

As an example of how the payments worked, from September through December 2016, INDIVIDUAL ONE sold the stolen canola to DAIRY ONE and deposited the proceeds into INDIVIDUAL ONE's bank account. Thereafter, on December 27, 2016, INDIVIDUAL ONE sent a wire transfer containing some of the proceeds from INDIVIDUAL ONE's bank account in Texas to SAWA's bank account that SAWA opened in his former spouse's name in Fresno County. SAWA used the proceeds that he received from the scheme for personal expenses.

///

///

A-1

Around January 2017, Best gave SAWA an old cell phone that belonged to Best's mother because Best was afraid that COMPANY ONE was onto their scheme and was monitoring the electronic devices the company had given to SAWA. Best and SAWA used the cell phone to secretly communicate with each other in furtherance of their scheme. Therefore, SAWA now agrees that he conspired to commit wire fraud in violation of 18 U.S.C. § 1349.