ERIC GRANT
United States Attorney
CODY S. CHAPPLE
CHAN HEE CHU
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:22-CR-000241-JLT-SKO |
|---|---|
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| SHAWN SAWA, | DATE: December 8, 2025 |
| Defendant. | TIME: 9:00 a.m. |
| | COURT: Hon. Jennifer L. Thurston |

## I.     INTRODUCTION

Defendant Shawn Sawa is set for sentencing after pleading guilty to conspiracy to commit wire fraud. Probation calculated his criminal history category to be I with a total offense level of 19, resulting in a guideline range of 30 to 37 months. The government, pursuant to its plea agreement, recommends a low-end sentence.

## II.    BACKGROUND

This case involved a scheme to defraud large agricultural companies by stealing thousands of tons of canola and other livestock feed over several years. During the charged period between January 2015 and February 2017, Sawa conspired with his codefendant Richard Best to steal approximately $4,800,000 worth of canola and other livestock feed ingredients. PSR ¶ 17.

### A.    The Scheme.

Sawa is a Canadian national who moved to California in 2007 to work for Company One. Company One is an agricultural supplier that shipped trainloads of canola and other livestock feed

ingredients to Best's transloading company, Richard Best Transfer, Inc. ("RBT") in Dinuba, California, for storage. PSR ¶ 5. Company One's customers would then pick up their canola directly from RBT. To track its inventory, Company One relied on inventory reports generated by RBT and Sawa to visually inspect the product to verify the reports. PSR ¶¶ 7 and 10. Sawa and Best exploited this reliance to steal thousands of tons of canola secretly.

They covered up the scheme by falsifying inventory reports and inspections while selling the stolen canola to Central Valley dairies and ranches. PSR ¶¶ 7–10. They did this by recruiting a retired feed broker to sell the stolen canola. PSR ¶ 13. At the direction of Best, the broker wired the proceeds from the sales of stolen canola into Sawa's bank account. *Id.* Best also made "kickback" payments to Sawa to ensure Company One increased its shipments of Canola to RBT. *Id.* Their scheme continued for several years until it abruptly ended in 2017. PSR ¶¶ 8–9.

**B.     The Collapse.**

On February 8, 2017, Company One received several customer complaints that there was no canola to pick up from RBT, despite the most recent inventory report showing approximately 11,000 tons—enough to fill 110 railcars—of canola at the facility. PSR ¶¶ 9–11. Initially, Sawa and Best tried to cover up the loss and blamed the rainy weather for the loss. PSR ¶ 9. The two secretly communicated about the cover-up through an old cellphone that previously belonged to Best's mother. ECF 20 at 14. They used this cellphone to avoid detection by Company One because Sawa's only other cellphone was a company phone. *Id.*

Sawa and Best's scheme almost fell apart a year earlier when another feed supplier discovered it was missing 3,988 tons of its canola at RBT. PSR ¶ 15. In a phone call with that company, Best admitted to conducting a Canola Ponzi Scheme where he took the other company's canola to fill Company One's shipments that were missing because of Sawa and Best's theft. *Id.* Best agreed to repay the company for the lost canola, which resulted in the two successfully avoiding detection for another ten months.

In total, Sawa is accountable for the 11,000 tons of canola from Company One, valued at $3,520,000, and the 3,988 tons of canola used to replace Company One's stolen canola, valued at $1,300,000. PSR ¶ 17. In total, Sawa is accountable for $4,820,000 in losses. *Id.*

**C.     The Aftermath.**

In March 2017, the parties began a civil lawsuit for breach of contract and other claims involving the missing canola in Fresno County Superior Court. That case settled in September 2023.

In 2022, a federal grand jury charged Sawa and Best with conspiracy to commit wire fraud and two counts of wire fraud in an indictment. ECF 1. It also charged Sawa individually with a fourth count for wire fraud. *Id.* at 5. In July 2023, Sawa pled guilty to one count of conspiracy to commit wire fraud in the indictment pursuant to a plea agreement with a public cooperation agreement. ECF 20–21. Best later pled guilty in October 2025 to conspiracy to commit wire fraud and two counts of wire fraud. ECF 70.

### III.     SENTENCING RECOMMENDATION

The government appreciates Sawa's acceptance of responsibility and cooperation in this case. His fraudulent conduct alongside Best, however, resulted in a substantial loss. They both benefited financially from the scheme and were able to cover it up through misrepresentations and fraud.

Sawa covered up the fraud through his position of trust working for Company One. PSR ¶ 33. He abused his managerial position to conceal the theft until it came crashing down. *Id.* This is properly accounted for in the PSR, which attributes the two-level enhancement under Section 3B1.3. *Id.* Sawa agrees with that enhancement in his plea agreement.

Sawa also agrees that he is responsible for a loss amount greater than $3,500,000. ECF 20 at 9. This matches probation's calculation of $4,820,000 that it attributed to Sawa for his criminal conduct. PSR ¶ 17. Therefore, the eighteen-level enhancement for this loss amount is properly applied to Sawa's guideline calculation.

The government, however, recognizes that Sawa played a smaller part in the scheme than his codefendant. PSR ¶ 32. Best controlled the facility, directed Sawa, provided Sawa with his deceased mother's cellphone to conceal their communications, and controlled payments to Sawa from the proceeds of their theft. *Id.* The PSR, therefore, properly incorporates this lesser degree of culpability by reducing the offense level by 3 points to reflect Sawa's role in the scheme. *Id.* Since this is already accounted for in the guideline calculation, the Court should not consider additional variances due to his role in the offense.

There are no objections to the PSR and Probation's calculation tracks the parties' guideline calculations in the plea agreement. The government believes the guideline range fits Sawa's conduct here.

The Court should therefore adopt Probation's calculation and sentence Sawa to the low end of the guidelines. The low end of the guidelines incorporates his lack of criminal history, as well as his cooperation with investigators during the prosecution of this case.

## IV. CONCLUSION

As set forth above, the Court should sentence Shawn Sawa to a low-end prison sentence. Such a sentence is substantively reasonable and sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

Dated: December 3, 2025

ERIC GRANT
United States Attorney

By: /s/ CODY S. CHAPPLE
CODY S. CHAPPLE
CHAN HEE CHU
Assistant United States Attorneys